UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 11 B 46854 |
| | ) | Chapter 7 |
| BRUNO and LINDA K. CASTELLANO, | ) | Judge Donald R. Cassling |
| | ) | |
| Debtors. | ) | |
| | ) | |
| ROY SAFANDA, Trustee in, Bankruptcy, | ) | |
| | ) | Adversary No. 13 A 01257 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LINDA K. CASTELLANO and J.T. DEL ALCAZAR, as SUCESSOR TRUSTEE of the FAITH F. CAMPBELL LIVING TRUST dated FEBRUARY 18, 1997, | ) | |
| | ) | |
| Defendants. | ) | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On February 18, 1997, Faith F. Campbell ("Ms. Campbell") created the Faith F. Campbell Living Trust dated February 18, 1997 (the "Living Trust"). (Pl. Ex. No. 1.) The Living Trust provided that, upon her death, the assets in the Living Trust would be divided equally among her four children, one of whom is the Debtor in this proceeding. (*Id.* at § 9.01.) The Living Trust also contained a spendthrift clause (the "Spendthrift Provision") intended to shield the Living Trust's assets from seizure by her children's creditors. The wording of the Spendthrift Provision and its application to the Debtor in this proceeding are the focus of this Opinion. The Debtor claims that her one-quarter share of the Living Trust's assets is protected from her creditors by operation of the Spendthrift Provision. The Chapter 7 Trustee argues that

the Debtor's share of the assets should be seized for the benefit of her creditors under a rarely-discussed section of the Bankruptcy Code, 11 U.S.C. § 548(e). Based upon the evidence introduced at trial and the Court's interpretation of § 548(e), the Court agrees with the Chapter 7 Trustee's position.

## JURISDICTIONAL AND PROCEDURAL POSTURE OF THIS PROCEEDING

This matter is before the Court on a two-count complaint (the "Complaint") filed by Roy Safanda, the Chapter 7 Trustee (the "Chapter 7 Trustee"), against Linda K. Castellano (the "Debtor") and J.T. Del Alcazar, as successor trustee of the Living Trust (the "Spendthrift Trustee"). The Complaint seeks, first, to avoid alleged fraudulent transfers under 11 U.S.C. § 548(e) and, second, turnover of assets under 11 U.S.C. §§ 543 and 550. As discussed below, the Court finds in favor of the Chapter 7 Trustee under both counts of the Complaint.

The Court has jurisdiction over this proceeding under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the District Court for the Northern District of Illinois. Under the Supreme Court's recent ruling in *Exec. Benefits Ins. Agency v. Arkison*, No. 12-1200, 2014 WL 2560461 (U.S. June 9, 2014), the Court will treat the fraudulent conveyance count as if it were a noncore matter, even though 28 U.S.C. § 157(b)(2)(H) lists fraudulent conveyance actions as core proceedings. As authorized by the Supreme Court in *Arkison,* the Court will issue its Opinion in the form of proposed findings of fact and conclusions of law. To the extent a conclusion of law is improperly characterized as a finding of fact, it should be considered a conclusion of law. To the extent a finding of fact is improperly characterized as a conclusion of law, it should be considered a finding of fact. *See In re Piper's Alley Co.*, 69 B.R. 382, 384 (N.D. Ill. 1987).

2

## FACTS AND BACKGROUND

Ms. Campbell died on February 11, 2011. As of October 31, 2011, the Living Trust held approximately $1.8 million in assets, not including the value of a cabin in Wisconsin. (See Pl. Ex. No. 6, Schedule of Assets Distributed.)

The Living Trust named the Debtor and her three siblings as equal beneficiaries and provided that "[u]pon the death of Faith F. Campbell and upon settlement of her estate, the Trustee shall divide and distribute as a class gift, free of Trust, the remaining [Living] Trust Estate." (Pl. Ex. No. 1, § 9.01.) Section 8.01 of the Living Trust further stated that, "[u]pon the death of Faith F. Campbell and upon settlement of her estate, this [Living] Trust shall terminate." The Living Trust was created in South Carolina, where Ms. Campbell resided. (*Id.* at § 8.01.)

Upon the death of Ms. Campbell, Bank of America, N.A.[1] was initially appointed as trustee of the Living Trust. Bank of America declined the appointment. (Pl. Ex. No. 2.) In March 2011, the Debtor and her siblings appointed the current Spendthrift Trustee as successor trustee. (Pl. Ex. No. 5.)

The Spendthrift Trustee is the husband of the Debtor's niece and is therefore related by marriage to all of the beneficiaries of the Living Trust, including the Debtor. No party claims that the Spendthrift Trustee is a disinterested party. No court appointed the Spendthrift Trustee to his position as successor trustee, no court supervises the exercise of his discretion under the Living Trust, and the Spendthrift Trustee has never been asked or required by any court or other agency to account for his handling of the Living Trust assets. (Pretrial Stmt., p. 15 at ¶¶ 19-20.)

The Living Trust contains the following Spendthrift Provision in § 10.03:

> If any beneficiary should attempt to alienate, encumber, or dispose of all or any part of the income or principal of this [Living] Trust

---

[1] Ms. Campbell named Merrill Lynch Trust Company of North Carolina as her original choice to be Trustee of her Living Trust, but by the time of her death, Bank of America had become the successor-in-interest to Merrill Lynch.

before it has been delivered by the [Spendthrift] Trustee, or if by reason of bankruptcy or insolvency or any attempted execution, levy, attachment, or seizure of any assets remaining in the hands of the [Spendthrift] Trustee under claims of creditors or otherwise, all or any part of the income or principal might fail to be enjoyed by any beneficiary or might vest in or be enjoyed by some other person, then the interest of that beneficiary shall immediately terminate *Thereafter, the [Spendthrift] Trustee shall pay to or for the benefit of that beneficiary only those amounts that the [Spendthrift] Trustee, in its sole and absolute discretion, deems advisable for the education and support of that beneficiary* until the death of the beneficiary or the maximum period permissible under the South Carolina rule against perpetuities, whichever first occurs.

(Pl. Ex. No. 1) (emphasis added).

By letter dated October 5, 2011 (the "Insolvency Letter"), the Debtor's attorney informed the Spendthrift Trustee's counsel that the Debtor was insolvent and issued him the following mandate:

> I am writing to you in relation to section 10.03 of the [Living] [T]rust [the Spendthrift Provision], to advise you that my client [the Debtor] and her husband have experienced insolvency due to the recession. They have closed their business and are filing for bankruptcy protection. *[The Debtor] considers that it is the [Spendthrift] [T]rustee's obligation to exercise his authority consistent with the provisions of the [Living] [T]rust identified above* [i.e., § 10.03].

(Pl. Ex. No. 9) (emphasis added).

At trial, the Spendthrift Trustee testified that after he received the Insolvency Letter, he opened up a separate Merrill Lynch account, named the "Faith F. Campbell *Spendthrift Trust f/b/o Linda Castellano*," into which he deposited the Debtor's one-quarter share of the Living Trust assets. (Pl. Ex. No. 6, Schedule of Assets Distributed) (emphasis added). Between themselves, the Spendthrift Trustee, and the Debtor referred to this account as the "Spendthrift Trust." Solely for the purpose of distinguishing this account from the Living Trust and without

4

implying any legal consequences from the Court's use of any label, the Court will, in this Opinion, adopt the label "Spendthrift Trust" used by the parties themselves to describe this account.

On November 21, 2011, the Debtor executed a "Receipt, Approval of Accounting, Release and Discharge of Trustee" (the "Receipt"). (Pl. Ex. No. 6.) In the Receipt, the Debtor averred that her status as a "named beneficiary" under the Living Trust was terminated as of October 5, 2011, by the Insolvency Letter. She characterized her current status as "a *life-time, limited beneficiary* at the sole discretion of the trustee of the Faith F. Campbell Spendthrift Trust created under the Campbell Living Trust (the 'Spendthrift Trust')."[2] (*Id.*) (emphasis added).

In the Receipt, the Debtor states

> I acknowledge that pursuant to the attached Schedule of Assets Distributed I will individually receive no distribution from the Living Trust and that the Spendthrift Trust shall receive my life-time, limited beneficial interest. This is in full satisfaction of my rights and interests under the Living Trust, *however reserving my beneficial interests pursuant to the Spendthrift Trust*, I approve the Schedule of Assets Distributed.

(*Id.*) (emphasis added).

The Debtor filed her voluntary Chapter 7 bankruptcy petition on November 18, 2011 (the "Petition Date"). (Pre-trial Stmt., p. 15 at ¶ 10.) Paragraph 20 of Schedule B of her schedules[3] lists the Debtor as the "[b]eneficiary of deceased mother's trust protected by spendthrift provision" in the amount of $400,000. (Bankr. No. 11 B 46854, Docket No. 1, Schedule B, ¶ 20.) However, the Living Trust itself is not listed as a creditor in the Debtor's bankruptcy

---

[2] The Court notes this is the second time the parties used the term "Spendthrift Trust" to describe the Merrill Lynch account.
[3] This paragraph requires the Debtor to list "[c]ontingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust."

5

Schedules, and the Spendthrift Trustee has not filed a proof of claim in the Debtor's bankruptcy case.

## APPLICABLE STANDARDS

Section 548(e)(1) of the Bankruptcy Code permits a trustee to avoid, as a fraudulent conveyance, any transfer of assets made by a debtor into a "self-settled trust or similar device" within the ten years preceding a debtor's bankruptcy filing:

> (e)(1) [T]he trustee may avoid any transfer of an interest of the debtor in property that was made on or within 10 years before the date of the filing of the petition, if –
> (A) such transfer was made to a self-settled trust *or similar device*;
> (B) such transfer was by the debtor;
> (C) the debtor is a beneficiary of such trust *or similar device*; and
> (D) the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that the transfer was made, indebted.

11 U.S.C. § 548(e)(1) (emphasis added).

Section 548(e) has received little attention in the case law. However, there appears to be no dispute that Congress enacted § 548(e) in order to avoid the deleterious results of certain state laws[4] that permitted debtors to shelter their assets from their creditors by placing them into self-settled spendthrift trusts (or similar devices) shortly before filing for bankruptcy. *Quality Meat Prods., LLC. v. Porco, Inc. (In re Porco, Inc.)*, 447 B.R. 590, 595 (Bankr. S.D. Ill. 2011); Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 548.07 at 548-87-89 (16th ed. rev. 2014). By permitting the bankruptcy trustee to seize these assets for the benefit of creditors, § 548(e) restored the common-law rule allowing creditors to avoid pre-bankruptcy spendthrift

---

[4] At the time § 548(e) was added to the Bankruptcy Code, five states (Alaska, Delaware, Nevada, Rhode Island, and Utah) had enacted statutes permitting debtors to shield their assets from creditors by transferring them to self-settled spendthrift trusts. *Quality Meat Prods., LLC. v. Porco, Inc. (In re Porco, Inc.)*, 447 B.R. 590, 595 (Bankr. S.D. Ill. 2011).

trusts designed to shield assets from creditors of an insolvent debtor. *Id.* (citing H.R. Rep. No. 109–31, 109th Cong., 1st Sess. at 449–50 (2005)), *reprinted in* 2005 U.S.C.C.A.N. p. 88.

The Chapter 7 Trustee bears the burden of proving, by a preponderance of the evidence, that the Debtor's actions constituted an avoidable fraudulent conveyance under § 548(e). *See Helms v. Roti (In re Roti)*, 271 B.R. 281 (Bankr. N.D. Ill. 2002), *aff'd*, No. 02 C 0925, 2003 WL 1089363 (N.D. Ill. Mar. 11, 2003); *Thompson v. Jonovich (In re Food & Fibre Prot., Ltd.)*, 168 B.R. 408, 418 (Bankr. D. Ariz. 1994) (citing *Grogan v. Garner*, 498 U.S. 279 (1991); *W. Wire Works, Inc. v. Lawler (In re Lawler)*, 141 B.R. 425, 428 (B.A.P. 9th Cir. 1992) ("A fair reading of the Supreme Court's opinion leads to the inference that the preponderance standard applies in all bankruptcy proceedings grounded in allegations of fraud.")).

## DISCUSSION

### Did the Debtor Transfer an Interest in Property?

The Debtor argues that she transferred nothing – she merely directed the Spendthrift Trustee to "exercise his authority consistent with the provisions of [Section 10.03, the Spendthrift Provision] of the [Living] Trust." According to the Debtor, any transfers or other dispositions of her share of the assets of the Living Trust were made by the Spendthrift Trustee in his complete and sole discretion, free from any exercise of control by her. The Chapter 7 Trustee argues, however, that the combined effect of the Insolvency Letter, the Receipt, and her familial relationship with the Spendthrift Trustee enabled the Debtor to effectuate a "transfer" of her share of the Living Trust assets. The Court agrees with the Chapter 7 Trustee's argument.

The Bankruptcy Code defines a "transfer" as "each mode, direct or *indirect*, absolute or *conditional*, voluntary or involuntary, of disposing of *or parting with* – (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D) (emphasis added). The Court finds that the Debtor

7

voluntarily effectuated an indirect, conditional parting with an interest in property—her share of the Living Trust assets. Rather than accepting direct receipt of those assets and then transferring them into a self-settled trust or the like, she recruited the Spendthrift Trustee to accomplish the equivalent result, schooling him, in the Insolvency Letter, in his "obligation to exercise his authority consistent with the provisions of the [Living Trust, i.e., § 10.03]." (Pl. Ex. No. 9.)

The Spendthrift Trustee honored her wishes by refraining from sending the Debtor her share of the Living Trust proceeds directly, instead setting up a new account (the Spendthrift Trust) into which he deposited the Debtor's share. The Debtor's use of the assets was then conditional, but only to the extent that it was subject to the discretion of an interested party, her nephew.

The Debtor confirmed both the fact and the effect of the transfer she had set in motion when she executed the Receipt. In that document, the Debtor confirmed in writing that the effect of the Insolvency Letter was to re-route her distribution from the Living Trust: "I acknowledge that . . . I will individually receive no distribution from the Living Trust and that the Spendthrift Trust shall receive my life-time, limited beneficial interest." (Pl. Ex. No. 6.)

### Were Assets Transferred into a Self-Settled Trust or Similar Device?

A self-settled trust has been defined as "[a] trust in which the settlor is also the person who is to receive the benefits from the trust, usually set up in an attempt to protect the trust assets from creditors." Black's Law Dictionary 1746, 10th ed. 2014. In determining the scope of the "similar device" language of the statute, the Court agrees with the court's conclusion in *Porco* that Congress's intent in enacting § 548(e) was to have the "similar device" provision interpreted broadly:

> Collier on Bankruptcy notes that the congressional decision to leave undefined the terms used in § 548(e), such as "similar

8

> device," indicates an intent for courts to interpret the statute broadly so as to effectuate its aims, noting that, "even if crafty lawyers draft devices not technically "self-settled trust[s]," court[s] will have the power to scrutinize them under the "similar device" provision.

*In re Porco,* 447 B.R. at 595 (quoting 5 Collier on Bankruptcy ¶ 548.10[3][a] (15th ed. rev.)); *see also Battley v. Mortensen (In re Mortensen),* Bankr. No. A09-00565-DMD, Adv. No. A09-90036-DMD, 2011 WL 5025249, at *6-7 (Bankr. D. Alaska May 26, 2011).

The Debtor argues that, because the Spendthrift Trust was created by the Spendthrift Trustee and is under his total discretion and control, the Spendthrift Trust was not in fact "self-settled" and therefore fails the test of § 548(e)(1)(A). The Court rejects this argument for the following reasons.

As discussed above, the Court finds that although the Debtor did not directly create the Spendthrift Trust, she caused its creation by advising the Spendthrift Trustee in the Insolvency Letter sent by her attorney that "Linda Castellano considers that it is the [Spendthrift] [T]rustee's obligation to exercise his authority consistent with the [spendthrift] provisions of the [Living] [T]rust." (Pl. Ex. No. 9.) Thereafter, the Debtor confirmed in the Receipt that the effect of her coaching of the Spendthrift Trustee in the Insolvency Letter was to ensure that her share of the Living Trust assets would be distributed not to her individually but into the newly-created Spendthrift Trust. Read together, the Insolvency Letter and the Receipt provide strong evidence that the Spendthrift Trustee invoked the Spendthrift Provision and created the Spendthrift Trust in direct response to the Debtor's express wishes. By its own terms, the intent of the Spendthrift Provision is to shield a beneficiary's interest in the Living Trust from his or her creditors, and the Debtor is, by her own written admission in the Receipt, clearly a beneficiary of the Spendthrift Trust created thereunder. No evidence was introduced to suggest the contrary.

Further, the Court cannot ignore the family relationship between the Debtor and the Spendthrift Trustee, as well as the total absence of any court supervision or control over the Spendthrift Trustee's decisions concerning disposition of the assets of the Spendthrift Trust. Family ties militate against any trustee exercising completely unfettered, independent discretion in administering a spendthrift trust. Lack of judicial oversight exacerbates the risk that the Spendthrift Trustee's independent judgment will be compromised by family entanglements. The Debtor had reason to assume that despite the creation of the Spendthrift Trust she would have every opportunity to influence, if not simply instruct, the Spendthrift Trustee to disburse funds according to her own discretion. Whether the Spendthrift Trust was a self-settled trust or similar device, the practical effect is the same – the Debtor can justifiably expect to exercise a significant degree of control over its assets.

Finally, § 548(e)(1)(A) provides an alternative to proof of the creation of a "self-settled trust" – proof of a "similar device" will suffice. In this case, the Court finds that the Chapter 7 Trustee has met his burden of proving that the Spendthrift Trust has each of the characteristics necessary to prove the creation of a device similar to a self-settled trust for purposes of analysis under § 548(e):

1. **Like a self-settled trust, the Spendthrift Trust was created in part to shield the Debtor's assets from her creditors:** The Spendthrift Trustee and the Debtor candidly admitted that the purpose of setting up the Spendthrift Trust was to shield assets from the Debtor's creditors. Indeed, the fact that the Spendthrift Trust was not created until after the Debtor had made a written declaration of insolvency and her written mandate to the Spendthrift Trustee "to exercise his authority consistent with the provisions of [the Spendthrift Provision] of the [Living Trust]" make it impossible to reach any other conclusion about the purpose of the parties in setting up the Spendthrift Trust.

2. **Like a self-settled trust, the Spendthrift Trust was created to preserve the right of the Debtor to receive future distributions from the Living Trust:** Both the Debtor and the Spendthrift Trustee also conceded that another important purpose of the Spendthrift Trust was to provide for the Debtor's education and support needs

under § 10.03 of the Living Trust and that the Debtor's nephew, the Spendthrift Trustee, had complete and unfettered discretion to make sure that this occurred.

3. **Although not directly created by the Debtor, the Debtor indirectly caused the creation of the Spendthrift Trust via the instructions she conveyed to the Spendthrift Trustee in the Insolvency Letter:** While it is true that the Debtor did not personally set up the Spendthrift Trust, there is no dispute that the Spendthrift Trustee did so in response to her request that he "exercise his authority consistent with the [Spendthrift Provision]" of the Living Trust. The Court concludes that the Debtor satisfied the "self-settled" aspect of § 548(e) by using the Spendthrift Trustee as her cat's paw to create the Spendthrift Trust, rather than setting it up directly.

4. **It is irrelevant for purposes of § 548(e) whether the formal requirements for establishing a trust under South Carolina law were satisfied:** Finally, the Court finds that, under the "similar device" language of § 548(e), the Chapter 7 Trustee need not establish that a formal trust was established according to South Carolina law; an account that was directly or indirectly created by the Debtor to shield her assets from her creditors while retaining a right to receive the assets from that account suffices to meet the requirements of the statute. Any more restrictive interpretation than that would have the effect of reading the "or-similar-device" language out of § 548(e).

As a result of these obvious similarities between a self-settled trust and the Spendthrift Trust, the Court finds and concludes that the Spendthrift Trust was a device similar to a self-settled trust for purposes of § 548(e)(1)(A).

The Court therefore finds that there was a transfer made by the Debtor to a self-settled trust or similar device under § 548(e)(1)(A) & (B).[5]

### Was the Debtor a Beneficiary of the Spendthrift Trust?

The Debtor insists that she is not a beneficiary of the Spendthrift Trust under § 548(e)(1)(C). This assertion is contradicted by the evidence, including documents containing the Debtor's own characterization of her status. The Spendthrift Provision clearly contemplates that if the provision is invoked, the beneficiary of the Living Trust becomes a lifetime

---

[5] There is an alternative analysis which leads to the same result. It is undisputed that the Living Trust set up by Ms. Campbell was a "self-settled" trust, since it was directly created by Ms. Campbell. All that § 548(e) requires is that the avoidable transfer be made within ten years of the bankruptcy filing by a debtor beneficiary. Even if the Court were to ignore the Spendthrift Trust and look solely at the Living Trust, the Debtor's actions taken in the Insolvency Letter and the Receipt would still have accomplished a "transfer" into a "self-settled trust or similar device," i.e., the Living Trust created by Ms. Campbell, that would be avoidable under § 548(e).

11

beneficiary of the resulting Spendthrift Trust. (Pl. Ex. No. 1.) Consistently with that reading, the Merrill Lynch account opened by the Spendthrift Trustee is titled the "Faith F. Campbell Spendthrift Trust *f/b/o Linda Castellano*." (emphasis added). The Debtor herself acknowledges the same when, in the Receipt, she describes herself as no longer a "named beneficiary" of the Living Trust, but now "a life-time, limited beneficiary at the sole discretion of the trustee of the Faith F. Campbell Spendthrift Trust created under the Campbell Living Trust." (Pl. Ex. No. 6) The Receipt further speaks of the Debtor's retention of her "beneficial interests pursuant to the Spendthrift Trust." (*Id.*)

Nor is the Debtor a "beneficiary" in name only. The instruments that designate her as such spell out the ways in which she substantively benefits from that status. The Spendthrift Provision provides that the Spendthrift Trustee "shall pay to or for the benefit of [a Living Trust beneficiary within the purview of the Spendthrift Provision] only those amounts that the [Spendthrift] Trustee . . . deems advisable for the education and support of that beneficiary." The Spendthrift Trustee's interpretation of this provision is expansive.[6] (Pl. Ex. No. 1, § 10.03.) At trial, he candidly admitted that, because he is not subject to any court oversight, it is within his sole discretion to distribute spendthrift funds for the Debtor's support and maintenance in any way he sees fit. By way of example, he could justify giving the entire amount in the Spendthrift Trust to the Debtor as a "support" distribution designed to alleviate the emotional anxiety she presumably feels as a result of her bankruptcy. This is not an entirely facetious analogy, given the family relationship between the two and the complete lack of court supervision over the Spendthrift Trustee's exercise of his discretion.

---

[6] For her part, the Debtor agreed at trial that the Spendthrift Trustee has complete and unfettered discretion at any time to distribute unlimited Spendthrift Trust funds for her support, maintenance, and/or education.

The Court finds that the Debtor is a beneficiary of the Spendthrift Trust for purposes of § 548(e)(1)(C).

### Did the Debtor Transfer Assets with Actual Intent to Hinder, Delay or Defraud?

Finally, § 548(e)(1) requires the Chapter 7 Trustee to demonstrate that the Debtor acted with actual intent to hinder, delay, or defraud her creditors by making the transfer. *See In re Sentinel Mgmt. Grp., Inc.*, 728 F.3d 660, 667-68 (7th Cir. 2013) (discussing application of "actual intent to hinder, delay, or defraud" and stating that a defendant could have an actual intent to defraud without having an actual intent to cause harm). For the following reasons, the Court finds and concludes that the Chapter 7 Trustee has established that the Debtor had the requisite actual intent.

First, the timing of the Debtor's execution of the Receipt, as well as the Spendthrift Trustee's creation of the Spendthrift Trust and distribution to the other three beneficiaries of the Living Trust, appear to have been dictated in large part by the Debtor's insolvency and bankruptcy petition. Under the terms of the Living Trust, its assets should have been distributed to the four beneficiaries upon or shortly after Ms. Campbell's death, which occurred on February 11, 2011, and upon settlement of her estate.[7]

As early as March 2011, the Spendthrift Trustee (according to his own testimony) became aware of the Debtor's financial difficulties. Although the Debtor's urgent need for cash was therefore apparent to the Spendthrift Trustee, he did not make the mandated distributions to the beneficiaries of the Living Trust in a timely manner. Not until October 5, 2011 did the

---

[7] The Spendthrift Trust was not created until approximately six months after Ms. Campbell's death, even though the Living Trust language requires a distribution of the assets and termination of the Living Trust upon Ms. Campbell's death and settlement of her estate. While the Debtor argues that settlement of the estate could not have occurred until the sale of a Wisconsin cabin owned by Ms. Campbell, there was nothing preventing the Spendthrift Trustee from distributing the liquid assets of the Living Trust to the beneficiaries much earlier than that if he elected to do so. The Spendthrift Trustee's authority to make disbursements and distributions was established by his testimony that he made a number of disbursements shortly after Ms. Campbell's death without waiting for sale of the Wisconsin cabin. (*See, e.g.,* Pl. Ex. No. 6, Schedule of Assets Distributed.)

Debtor issue the Insolvency Letter to the Spendthrift Trustee, who then invoked the Spendthrift Provision and created the Spendthrift Trust. The Spendthrift Trustee admitted that he did not make any distributions to any of the named beneficiaries of the Living Trust until after October 31, 2011. The Debtor executed the Receipt on November 21, 2011, and the Spendthrift Trustee deposited her distribution into the Merrill Lynch account opened for her benefit. (See Pl. Ex. No. 6.) The Debtor was therefore already insolvent on the date she executed the Receipt, as well as at the time the Spendthrift Trustee made distributions. Along with the Debtor's testimony that the purpose of the Spendthrift Trust was to prevent creditors from reaching her interest, the Court finds that these facts establish that the Debtor and the Spendthrift Trustee at a minimum contemplated using the Spendthrift Trust device as a mechanism to avoid the Debtor's creditors. Indeed, they suggest that the Debtor and the Spendthrift Trustee actively planned and structured the creation of the Spendthrift Trust with the explicit purpose of shielding those assets from creditors – the precise action that § 548(e) was created to avoid. Even now, the Spendthrift Trustee continues to maintain that account subject to his sole discretion to distribute funds for the Debtor's support or education.

In summary, the transfer of funds was not timed in accordance with the terms of the Living Trust or even with the onset of the Debtor's financial need. It was delayed until an instrumentality had been created to deny the Debtor's creditors access to these assets while making them available for the Debtor's benefit.

Second, the Debtor testified at trial that her understanding was that the Spendthrift Trust was created to prevent her creditors from reaching her one-quarter share of the assets. The Spendthrift Trustee was equally candid, testifying that the purpose in setting up the Spendthrift Trust was to shield assets from the Debtor's creditors. This testimony, coupled with the timing

of the events outlined above, make it impossible to characterize the purpose of the parties in setting up the Spendthrift Trust as anything other than to thwart the Debtor's creditors. Therefore, the Court finds that the Debtor intended to hinder, delay, or defraud her creditors in making the transfer.

### Turnover and Recovery of the Transfer Under 11 U.S.C. §§ 543 & 550

Having found that the transfer of the Debtor's interest in the assets of the Living Trust and the Spendthrift Trust is avoidable by the Chapter 7 Trustee, the Court further finds that § 550 entitles the Chapter 7 Trustee to recover the value of the same.[8] In addition, having concluded that the transfer is avoidable under § 548(e), the Court finds that the Chapter 7 Trustee is likewise entitled to enforce the avoidance of that transfer under § 543, as requested under Count II of the Complaint, because the Spendthrift Trustee is acting as a custodian, in control of property of the estate under § 543(a). The Spendthrift Trustee is therefore required by § 543(b)(1) to turn over the property of the Debtor in his possession and to file an accounting under § 543(b)(2). Therefore, the Court finds that the Chapter 7 Trustee is entitled to turnover of the property by the Spendthrift Trustee under § 543.

### CONCLUSION

For the foregoing reasons, the Court recommends that the District Court find that the Chapter 7 Trustee has met his burden and has established an avoidable transfer under § 548(e)(1). The Court therefore recommends that the District Court find in favor of Roy Safanda, in his capacity as Chapter 7 trustee of the bankruptcy estate of Linda Castellano, and further find that the funds in the Spendthrift Trust shall be turned over to the Chapter 7 Trustee under §§ 543 and 550.

---

[8] Section 550 provides in part that to the extent a transfer is avoided under § 548, the Chapter 7 Trustee "may recover, for the benefit of the estate, the property transferred from . . . , the initial transferee," in this case, the Spendthrift Trustee. 11 U.S.C. § 550(a)(1).

These constitute the Court's proposed findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 9033.

**ENTERED:**

DATE: August 6, 2014

Donald R. Cassling
United States Bankruptcy Judge